IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:19-cr-112 |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH LEE FULTZ, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

**INTRODUCTION**

On July 18, 2019, the government obtained a six-count indictment charging the defendant, Joseph Fultz, with five acts of sexual exploitation of children on April 16, 2019, in violation of 18 U.S.C. §§ 2251(a), and (e) (counts one through five); and possession of child pornography on April 25, 2019, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), and 2252(b)(2). A notice of forfeiture was also filed pursuant to 18 U.S.C. § 2253. On February 21, 2020, Mr. Fultz formally accepted responsibility for his offense by pleading guilty to count five of the indictment, and consenting to the forfeiture, pursuant to a written plea agreement. The agreement calls for dismissal of the remaining counts at the time of sentencing. The Court accepted his guilty plea on March 16, 2020.

The presentence report drafter determined that Mr. Fultz's base offense level under the advisory sentencing guidelines is 32. (PSR ¶ 30). Because the offense involved a minor under the age of twelve, four additional levels were added. (PSR ¶ 31). Because the offense involved Mr. Fultz's children, two additional levels were added. (PSR ¶ 32). Due to the application rules, this same calculation occurred for each victim, and four additional levels were added under the

multiple count rules (grouping being prohibited by the guidelines for this offense). (PSR ¶¶ 58–60). Because similar conduct investigated by the Department of Human Services occurred in 2018, a five-level pattern enhancement was applied under USSG §4B1.5(b). (PSR ¶ 62). After applying a three-level reduction for acceptance of responsibility (PSR ¶¶ 63, 64), and calculating his criminal history category as I (PSR ¶ 69), the presentence report drafter found a total offense level of 43, and an advisory sentencing guideline range of life, which therefore falls to the statutory maximum of 360 months of imprisonment, pursuant to USSG §5G1.1(a). (PSR ¶ 114). Mr. Fultz respectfully argues that a sentence below the advisory range at or near the fifteen year (180 month) mandatory minimum is "sufficient" under the 18 U.S.C. § 3553(a) factors, and that the guidelines recommend a "greater than necessary" sentence in this case.

## ARGUMENT

There is a line between pictures that are captures of innocent childhood memories, and lascivious depictions that amount to sexual exploitation under the law. During a visit in April of 2019, Mr. Fultz took some pictures of his children that crossed that line. (PSR ¶ 11). Some pictures depicted his daughters in sexually suggestive positions, and some contained the lascivious exhibition of the genital area. *Id*. His daughters reported what had happened to their mother after they returned home from the visit, and she contacted law enforcement. *Id*. During a subsequent forensic interview, the children all described the events of the visit, and noted that Mr. Fultz used his phone to take the pictures. (PSR ¶¶ 13–14). The children reported that Mr. Fultz told them he was putting selfies they had taken of themselves on Facebook, but that the pictures involving nudity were private and would not be shared. (PSR ¶ 14). They also stated that Mr. Fultz warned them not to tell their mother about the private photographs, because he would get in trouble with the Department of Human Services. *Id*. Mr. Fultz had previously had

contact with the Department of Human Services in May of 2018, after his children had reported him taking pictures of their rear-ends as part of a game they were playing. (PSR ¶ 17). Mr. Fultz had admitted that conduct to the Department of Human Services investigator, and that he still had the photographs. *Id*. The Department did not refer the matter to law enforcement. *Id*.

Based on the statements of his children after the April pictures, a search warrant was obtained and executed on Mr. Fultz's apartment just over a week later. (PSR ¶ 15). On Mr. Fultz's desktop computer and smartphone, twelve pictures taken of his daughters involved in various degrees of nudity that had been deleted were recovered by the forensic examiner on the devices. (PSR ¶ 16). Also recovered from the deleted files were three pictures, taken in March of 2018 in Kentucky, of the children of a friend of Mr. Fultz that contained partial nudity. (PSR ¶¶ 19–20). Pictures of Mr. Fultz's children from the 2018 incident investigated by the Department of Human Services were also recovered from the carved space on the desktop computer. (PSR ¶ 18). The Google search history on the desktop showed searches related to naturism and family nudism. (PSR ¶ 16).

Mr. Fultz was arrested on state charges related to these events, on May 1, 2019. The federal charges in this case were brought a couple of months later. Mr. Fultz recognized that some of the pictures he had taken crossed the legal line, and depicted lascivious content. Utilizing perhaps the most obvious example of such a picture from the evidence, an image of his daughters partially disrobed and displaying their anuses and genitals to the camera, the parties entered a plea agreement to one count of sexual exploitation of children, and Mr. Fultz has accepted responsibility for his offense. The remaining question in the case is what sentence to impose on Mr. Fultz.

The offense in this case is very serious under the law, and that seriousness is reflected in the statutory penalty scheme mandated by Congress. Mr. Fultz faces anywhere from fifteen to thirty years of imprisonment in this case. The question becomes where his sentence should fall on that spectrum. Whatever sentence the Court imposes within the statutory range will be lengthy, and will remove Mr. Fultz from society and his children's lives until they will have reached adulthood. He will not be released until he is at or very near the typical age of retirement, at which point he will have to try to rebuild a life while remaining on supervised release by the United States Probation Office, and required to register as a sex offender wherever he resides. This, for a person who has no prior criminal history of any sort, acknowledges the seriousness of his offense, and has accepted responsibility for his offense conduct. (PSR ¶¶ 27, 63–64, 69).

Taking a closer look, the advisory sentencing guidelines recommend a sentence of life imprisonment, capped at the thirty-year statutory maximum for the count of conviction. This high recommendation under the advisory sentencing guidelines is due to a combination of factors. In particular, the guideline for this offense has a special directive that each victim be treated like a separate count of conviction under the application rules for multiple counts of conviction (despite there not actually being multiple counts of conviction in the case), which added four additional levels to the offense level. *See* USSG §2G2.1(d)(1) (Special Instruction). Mr. Fultz also receives an additional five-level enhancement for a pattern of activity, which results in a total increase of nine offense levels, and pushes the offense level beyond level 43. It essentially negates his acceptance of responsibility under the advisory guidelines, and while the policy considerations underlying these rules may have some merit as applied to some cases, they

paint with a broad brush, and do little to nothing to effectively differentiate between the types of offense conduct that fall under this guideline.

Indeed, there is no allegation that Mr. Fultz has ever engaged in sexual activity with children. Yet the recommendation made by the advisory sentencing guidelines would punish him to the same degree as the most egregious, contact-offender sexual predator convicted of this offense. It also recommends he be punished like a career criminal, despite his lack of any prior criminal history. While some of this doubtlessly stems from the Sentencing Commission's efforts to tether the advisory sentencing range to the mandatory minimum penalties required by statute, it results in a lack of precision within the guideline system that fails to adequately differentiate between offenders, which risks creating not only unwarranted sentencing disparity, but also unwarranted sentencing similarities between cases like this and more egregious and horrific sexual exploitation offenses. *See Gall v. United States*, 552 U.S. 38, 55 (2007) (observing the appropriateness of the district court considering the need to avoid unwarranted *similarities* among other defendants who were not similarly situated) (emphasis in original).

In addition, the Court must take Mr. Fultz's personal history and characteristics into account when deciding what sentence is "sufficient" for him under the sentencing factors of 18 U.S.C. § 3553(a). Beyond having no criminal history, he is currently 51 years old. (PSR ¶ 74). His father died young from a heart attack when Mr. Fultz was a child, and his mother reacted by becoming very protective and "extremely religious." *Id*. His living conditions deteriorated after his father's death and his mother's reaction to it, and he was bullied in school. (PSR ¶ 75). He was involved in activities like chess and quiz club, and does not have any problems with drug or alcohol abuse. (PSR ¶¶ 75, 93–95). He graduated from high school, and has an Associate degree in computer networking. (PSR ¶¶ 97–98).

Mr. Fultz built a good life, was married for ten years, and has five children. (PSR ¶ 82). Four of the children are quadruplets, and his marriage ended in 2010 around the time of their birth, when his wife unexpectedly told him one day that she did not love him anymore and kicked him out of the house. *Id*. He is ordered to pay child support, and had visitation with his children up until the events of this case. *Id*. He has worked over the years as phone or technical support through temporary employment agencies. (PSR ¶¶ 101–102, 104–105). He was briefly on long-term disability due to his epilepsy in 2017, before returning to work in technical support and repair, while continuing to battle his health problems. (PSR ¶ 103). At the time of his arrest in this case, he was working as an independent contractor providing technical support to the Iowa Department of Natural Resources. (PSR ¶ 101). His future goals include working within the Bureau of Prisons while serving his time (if his health permits), maintaining his computer skills, and obtaining additional education so he can obtain employment upon his release from custody. (PSR ¶ 98). He also wants to find a way to reconnect with his children while on supervised release in the future. *Id*. He currently plans to relocate to Indianapolis, Indiana, which is where previously lived for fourteen years as a teen and young adult. (PSR ¶¶ 83–84).

Besides problems with epilepsy, Mr. Fultz suffers from an extremely serious heart condition. (PSR ¶¶ 87–89). He has cardiomyopathy,[1] chronic systolic heart failure,[2] has an

---

[1] Cardiomyopathy is a disease of the heart muscle, where the heart becomes less able to pump blood and maintain normal rhythm. Not only can it lead to heart failure, it can cause other health complications. There is no cure for the condition, and efforts can only be made to reduce complications and to try to prevent the disease from worsening. *See* "What is Cardiomyopathy in Adults?" American Heart Association, *available at* https://www.heart.org/en/health-topics/cardiomyopathy/what-is-cardiomyopathy-in-adults (last accessed October 27, 2020).

[2] Chronic systolic heart failure is when the left heart ventricle cannot contract normally and pump with enough force to circulate blood. *See* "Types of Heart Failure" American Heart Association, *available at* https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/types-of-heart -failure#:~:text=There%20are%20two%20types%20of,push%20enough

implanted cardioverter defibrillator (i.e., a pacemaker), has right bundle branch block,[3] and suffers from sarcoidosis.[4] *Id.* His epilepsy manifested in childhood, but became more serious in 2017, when a seizure resulted in a car accident. (PSR ¶ 88). He continues to have several seizures a month, which come without warning and leave him confused for several seconds after they pass. In addition to confirming these prior diagnoses, the Polk County Jail is also treating Mr. Fultz for hypertension. (PSR ¶ 89). He is on a plethora of medications for these conditions, and they limit his ability to work and perform some tasks, along with making him a more vulnerable member of inmate population, which the Court should take into account when determining the sentence in this case. *See* USSG §5H1.1 (policy statement acknowledging that age may be relevant to sentencing considerations); USSG §5H1.4 (policy statement acknowledging that physical impairment is relevant to sentencing).

Indeed, besides likely shortening his life span, Mr. Fultz's medical conditions place him at higher risk for severe complications and/or death should he contract COVID-19. *See* "Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) — United States, February 12–March 16, 2020," Centers for Disease Control and Prevention Report (March 18, 2020), *available at* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm (last accessed

---

%20blood%20into%20circulation (last accessed October 27, 2020).

[3] Right Bundle Branch Block (RBBB) is a problem with the heart's ability to conduct electrical signals, which can be caused by other heart problems (such as cardiomyopathy). *See* "Right Bundle Branch Block" Cedars Sinai, *available at* https://www.cedars-sinai.org/health-library/diseases-and-conditions/r/right-bundle-branch-block.html (last accessed October 27, 2020).

[4] Sarcoidosis is an inflammatory organ disease where inflamed tissues form in certain organs in the body, most often the lung and lymph glands, and may affect their function. *See* "Sarcoidosis" Web MD, *available at* https://www.webmd.com/lung/arthritis-sarcoidosis#:~:text=Sarcoidosis%20is%20an%20inflammatory%20disease,certain%20organs%20of%20the%20body. (last accessed October 27, 2020).

October 27, 2020) (noting that age and serious underlying health conditions lead to increased risk for severe COVID-19 associated illness and death). Heart problems and sarcoidosis put him in a category where he is likely to have serious and potentially fatal complications if he contracts the virus. Mr. Fultz has thus far avoided contracting COVID-19 while in the Polk County Jail, likely because he has kept himself in protective custody—nearly solitary confinement—due to the nature of the charges against him since the beginning of the case. While doing so may have protected his physical health so far, it has strained his mental health during this difficult year. He will have to continue to try to navigate a prison system that makes it hard to avoid contagions, and where the Bureau of Prisons is much less likely to allow Mr. Fultz to keep himself in protective custody than is the Polk County Jail, even if he continues to wish to do so. *See* Joseph A. Bick, "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8): 1047-1055 (2007), *available at* https://doi.org/10.1086/521910 (last accessed October 27, 2020) (discussing how the prison environment is optimal for the transmission of contagions). Regardless of what happens with the COVID-19 pandemic in this country as more time passes, being incarcerated has already become harsher and more difficult than any time in recent memory, with lockdowns being frequent, movement extremely limited, in-person social visits restricted by facility and contact-less, and rehabilitative and correctional programming not available. *See* Bureau of Prisons, "BOP Implementing Modified Operations," *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed October 27, 2020). The Court can take this reality into account when determining what a sufficient sentence is for Mr. Fultz in this case.

In conclusion, Mr. Fultz crossed the legal line by taking the pictures involved in this case. He recognizes that fact, understands the seriousness of the offense under the law, and has accepted responsibility for what he has done. He deeply regrets the harm his conduct has caused,

and any negative impact it may have on anyone now, or in the future.  He had deleted the offending images prior to execution of the search warrant in this case, and he had not trafficked the images on the internet or otherwise participated in the illegal marketplace for illicit images of children seen in many of these types of cases.  He has never engaged in sex acts with a child, which differentiates him from the most serious of offenders who face these types of charges.  There is no dispute that Mr. Fultz committed a serious crime, and that the punitive sanction mandated by Congress for the offense is consequently, very harsh.  However, the maximum sentence of thirty years is greater than necessary given the nature and circumstances of this case, particularly after Mr. Fultz's personal history and characteristics are taken into account. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.").  The Court should impose a sentence at or near the fifteen year minimum in this case, because such a sentence would be sufficient to fulfill the mandates of 18 U.S.C. § 3553(a), and appropriately reflects Mr. Fultz individual facts and circumstances when compared to the spectrum of offenders in these types of cases.

        Respectfully submitted,

         */s/ Joseph Herrold*
        Joseph Herrold, Assistant Federal Defender
        FEDERAL PUBLIC DEFENDER'S OFFICE
        400 Locust Street, Suite 340
        Des Moines, Iowa 50309-2353
        PHONE: (515) 309-9610
        FAX: (515) 309-9625
        E-MAIL: joe_herrold@fd.org
        ATTORNEY FOR THE DEFENDANT

CERTIFICATE OF SERVICE

    I hereby certify that on October 27, 2020, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

                                                 */s/ Morgan Conn*, Paralegal